# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **RONALD CLAYTON MONCRIEF,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | 7:20-cv-01135-LSC |
| v. ) | |
| ) | |
| **SOCIAL SECURITY ADMINISTRATION,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OF OPINION

### I.   Introduction

The plaintiff, Ronald Clayton Moncrief ("Moncrief" or "Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Moncrief timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Moncrief was 44 years old at the time of his alleged onset date. (Tr. 22.) He completed high school, and he is able to communicate in English. (Tr. 22, 156-57.)

His past work includes experience as a delivery driver. (Tr. 21, 157.) Plaintiff claims that he became disabled on July 31, 2016. (Tr. 17, 156).

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *Id.* The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that

"substantial evidence in the record" adequately supported the finding that the plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. *Id.*

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent her from performing his past relevant work, the evaluator will make a finding of not disabled. *Id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the

plaintiff can perform other work, the evaluator will find her not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work the evaluator will find her disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the Administrative Law Judge ("ALJ") found that Plaintiff has not engaged in SGA since July 31, 2016, the alleged date of the onset of his disability. (Tr. 17.) According to the ALJ, Plaintiff's degenerative disc disease ("DDD"); obesity; bilateral carpal tunnel syndrome, status post release on left; and mastocyctic colitis are "severe impairments." (*Id.*) The ALJ also determined that Mr. Moncrief had nonsevere impairments consisting of hyperlipidemia, gastroesophageal reflux disease ("GERD"), obstructive sleep apnea ("OSA"), hypertension, chronic kidney disease III, diabetes mellitus, degenerative joint disease ("DJD") of the left foot, and plantar fasciitis. (*Id.*) However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18.) The ALJ determined that Plaintiff has the following RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) except he can occasionally climb ramps and stairs, stoop, kneel, and crouch; he should never climb ladders, ropes or scaffolds nor should he crawl; he can frequently handle, finger with his bilateral upper extremities; he can have only occasional exposure to extremes of cold as well as vibration;

4

> he should have no exposure to hazards such as unprotected heights and dangerous machinery; would need to alternate between standing and sitting every hour for 1-3 minutes but would remain on task.

(*Id.*)

According to the ALJ, Plaintiff is able to perform his past relevant work as a delivery driver because that work "does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (Tr. 21.) The ALJ also determined that Plaintiff was a "younger individual age 18-49" at 44 years old, on the alleged disability onset date, but his age category subsequently changed to "closely approaching advanced age." (Tr. 22.) The ALJ also found that Plaintiff has at least a high school education, and is able to speak English, as those terms are defined by the regulations. (*Id.*) The ALJ determined that the "[t]ransferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled." (*Id.*) Because Plaintiff cannot perform the full range of light work, the ALJ enlisted a vocational expert ("VE") and used the Medical-Vocational Rules as a guideline for finding that, in additional to his past relevant work, there are other jobs in the national economy with a significant number of positions that Plaintiff is capable of performing, such as a garment sorter, laundry folder, and mail sorter. (*Id.*) The ALJ concluded her findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from July 31, 2016, through the date of this decision." (Tr. 23.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates

against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520. 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1989)).

### III. Discussion

Plaintiff argues that the ALJ's decision should be reversed because substantial evidence does not support the ALJ's credibility determination concerning Plaintiff's subjective complaints and was based on an incorrect evaluation of the pain standard. (Doc. 14 at 13-23.)

Plaintiff's subjective complaints alone are insufficient to establish a disability. *See* 20 C.F.R. §§ 404.1529(a), 416.926(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the

presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a plaintiff claims disability due to pain or other subjective symptoms. The plaintiff must show evidence of the underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of Plaintiff's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); *Wilson*, 284 F.3d at 1225–26. In evaluating the extent to which the Plaintiff's symptoms, such as pain, affect his capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of Plaintiff's symptoms, (3) the Plaintiff's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the Plaintiff takes to relieve symptoms, and (8) any conflicts between a Plaintiff's

statements and the rest of evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 16-3p. In order to discredit Plaintiff's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer*, 395 F.3d at 1210.

A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548–49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom.*, *Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Courts in the Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). However, a reversal is warranted if the decision contains no indication of the proper application of the pain standard. "The question is not ... whether [the] ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Here, the ALJ noted that the impairments underlying Plaintiff's medical conditions could be reasonably expected to cause his alleged symptoms and functional limitations, satisfying the first part of the pain standard. (Tr. 19.) However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these alleged symptoms were "not entirely

consistent with the medical evidence and other evidence in the record." (*Id.*) The ALJ covered a variety of evidence to support her conclusion, including objective medical evidence and Plaintiff's subjective complaints. (Tr. 19-23.)

Plaintiff suggests the ALJ cherrypicked medical records to undersell the severity of Plaintiff's needs. (Doc. 14 at 13-16.) In describing notes from Dr. Sundar at GI Associates of West Alabama in August 2018, the ALJ said that Plaintiff required "low to moderate severity care." (Tr. 21.) To counter, Plaintiff cites records showing that Dr. Sundar indicated that Plaintiff required "Moderate Severity care" with limited management options on May 3, 2018, and by October 8, 2018, Plaintiff required "Moderate to High Severity care." (Doc. 14 at 14-16; Tr. 349.) Plaintiff also notes that the October visit revealed more concerning findings, including 3-4 bowel movements per day, fecal urgency, nocturnal awakening with pain, and avoiding leaving home due to the severity of Plaintiff's symptoms. (Doc. 14 at 14-15; Tr. 365.) Plaintiff further points to Dr. Sundar's notes from the August visit remarking on abnormal findings from a colonoscopy performed on June 19, 2018, showing diverticulosis and hyperplastic/benign colon polyps. (Doc. 14 at 14; Tr. 355.)

Plaintiff further argues that the ALJ's remark that "treatment for this condition has been generally conservative" ignores the reality that only limited

treatment options were available. (Doc. 14 at 15; Tr. 21.) In support of this argument, Plaintiff cites *Lamb v. Bowen* and Judge Allgood's statement, "No examining physician ever questioned the existence of appellant's pain. They simply found themselves unable to cure the pain." 847 F.2d 698, 702 (11th Cir. 1988). Plaintiff seems to argue that the ALJ's statement suggests an assumption that a conservative treatment plan reflects a milder manifestation of Plaintiff's illness, which he contends is not the case.

Furthermore, Plaintiff argues that the ALJ discounted testimony by Plaintiff and the VE. (Doc. 14 at 15-16.) At the hearing, Plaintiff testified that he typically made 3-4 visits to the restroom during work hours, each lasting between 20 and 30 minutes, which would amount to approximately 1 ½ hours during a typical work day. (Doc. 14 at 15-16; Tr. 47.) The VE, however, testified that employers accounted for a 15-minute break in the first part of the shift, up to an hour for lunch, another 15-minute break later in the shift, and unscheduled breaks totaling up to 10 minutes per shift. (Tr. 62.) The VE testified, "Anything above that would not be tolerated, and would preclude all employment." (*Id.*)

Plaintiff analogizes this case to *Denson v. Barnhart*, 401 F. Supp. 2d 1250 (S.D. Ala. 2005). (Doc. 14 at 16.) In *Denson*, the District Court reversed the ALJ decision where the treating physician determined that the plaintiff would have about 1-6

11

bowel movements per day, leaving the plaintiff indisposed for approximately 15 minutes each time. 401 F. Supp. 2d at 1253. The VE testified that if this occurred on a sustained basis, it would preclude any competitive work. *Id.*

However, the court's decision in *Denson* seems more concerned with a change that the ALJ made in describing the physician's assessment, "changing [the doctor's] wording from *would* to *could,* [and] discuss[ing] the treating physician's '**potential** symptomatic limitations' and [finding] that those symptoms never materialized." *Id.* at 1254. The court determined, "The treating physician very clearly stated that certain symptoms would occur; the ALJ changed the opinion and ignored the testimony of the VE which was relevant to that opinion." *Id.* The basis for the court's reversal seems to be this error by the ALJ in relating the doctor's assessment: "The Court finds it disturbing that the ALJ changed [the physician's] statements and furthermore gives no explanation for doing so. Such action cannot be found harmless." *Id.*

The record in Plaintiff's case is not so clear. While Plaintiff testified about his need for frequent breaks and the VE offered testimony about the limitation that would create in Plaintiff's employment opportunities, the Plaintiff also testified in response to questions by his attorney about how he was able to maintain employment while operating under those limitations before. (Tr. 47-48.)

> Attorney: Okay. Now, you're working during that time. How could you do that?
>
> Plaintiff: The job that I had allowed me -- delivery gave me a little bit more flexibility that I could stop by somewhere and use the restroom.
>
> Attorney: … [I]f we move forward to today, would your testimony be any different as far as the number of times that you had to go to the restroom?
>
> Plaintiff: No.

(*Id.*) The ALJ ultimately determined that Plaintiff "is capable of performing past relevant work as a delivery driver." (Tr. 21.) It seems clear that the ALJ considered the testimony of the Plaintiff and the VE, but ultimately concluded that if Plaintiff was able to perform work as a delivery driver and needed the same number of breaks at the time of the hearing, then Plaintiff would still be able to perform that kind of work.

Plaintiff also alleges that the ALJ erred in evaluating Plaintiff's lower back pain. (Doc. 14 at 16-22.) Plaintiff points to the record of an MRI on May 7, 2018, substantiating Plaintiff's diagnosis of degenerative disc disease. (Doc. 14 at 19-20.) The impressions from the MRI showed: "T11-T12 large right paracentral disc extrusion causing moderate right lateral recess stenosis and moderate neutral foraminal stenosis. L5-S1 left paracentral disc protrusion versus postoperative changes causing abnormal signal in the left lateral recess and mild thickening of the descending left S1 nerve root…." (Tr. 301-02.)

Plaintiff then asserts that the ALJ could have, and presumably should have, considered medical treatises to conclude that the severity of Plaintiff's alleged pain could reasonably be expected due to his documented medical condition, in satisfaction of the second prong of the pain standard. (Doc. 14 at 20-22.) Plaintiff refers to several online resources as examples. (*Id.*) None of the resources Plaintiff cites, however, indicate the level of pain that is typical of the conditions listed or the kinds of limitations that are expected with such conditions. (*Id.*)

The ALJ did consider the evidence in the record. (Tr. 19-20.) The very first piece of evidence that the ALJ notes related to Plaintiff's lower back pain is the MRI Plaintiff highlighted as evidence of his degenerative disc disease. (Tr. 19, 301-02.) While the ALJ acknowledged that the MRI showed "abnormal signal in the left lateral recess and mild thickening of the descending left S1 nerve root" and "imaging of the claimant's back showed limitation," he also recognized that "treatment notes indicate that the claimant was independent with activities of daily living. (Tr. 19, 302.) Specifically, the ALJ noted the June 2018 treatment note that showed negative straight leg raise tests bilaterally. (Tr. 19, 323.) Those records also describe Plaintiff experiencing pain in his lumbar spine, but he still showed a normal range of motion in his thoracic spine and "[n]ormal pain" for the range of motion in his lumbar spine with "increased pain with flexion." (Tr. 19-20, 323.) A couple months later in

14

August 2018, treatment notes show that Plaintiff's activities of daily living were limited due to pain, but his prescription medication provided "improvement." (Tr. 20, 326.)

The ALJ also looked at records from an October 2018 visit to the SpineCare Center. (Tr. 20, 422-32.) During that visit, Plaintiff continued to report issues with pain, but did not request a refill for his pain medications, even though he said they help, because he did not have to take them often. (Tr. 20, 424.) Records from that visit also show that the cervical spine and thoracic spine were normal and showed no pain with range of motion and the lumbar spine was normal with some tenderness and had normal pain with range of motion that increased with flexion. (Tr. 20, 429-30.)

The ALJ also referred to more recent treatment notes, including some from July and October 2019. (Tr. 20.) At an office visit in July 2019, Plaintiff reported that his activities of daily living were not impaired, showed no signs of acute distress, and displayed the full range of motion with no swelling or deformities in his musculoskeletal exam. (Tr. 526, 531.) At an October 2019 visit to the SpineCare Center, Plaintiff reported that his pain ranged from a level 2 at best to 8 at worst and that he was experiencing level 4 pain at the time of the visit. (Tr. 447.) Notes did

indicate that Plaintiff used a cane to ambulate on occasion, but they also show that his pain was alleviated with rest and medication. (Tr. 20, 446-47.)

The ALJ also considered Plaintiff's subjective testimony. (Tr. 19.) He described how Plaintiff testified about experiencing back problems since his 2003 surgery and how additional surgical intervention was not recommended. (Tr. 19, 36.) Plaintiff also testified that muscle relaxer and anti-inflammatory medications he was prescribed do help some with his pain. (*Id.*) Plaintiff also testified he had surgery for carpal tunnel on the left, but he still has pain and limitations associated with carpal tunnel on the right. (Tr. 19, 38-39.) The ALJ also described Plaintiff's testimony about how his symptoms for irritable bowel syndrome did not appear to be associated with any specific triggers. (Tr. 19, 40-41.) Plaintiff said he would spend most of the day reclining or lying down and was able to sit for approximately two hours before needing to change position. (Tr. 19, 45-46.) He also stated that he takes food and drinks to his grandmother at times. (Tr. 19, 52-53.) He can also prepare a sandwich or warm up some soup for himself, drive, and go grocery shopping for the family usually twice each week. (Tr. 41-42, 49.)

After taking all of this evidence into consideration, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the [Plaintiff's] statements

16

concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence." (Tr. 19.) The ALJ determined that the Plaintiff's testimony about his pain and limitations was "inconsistent because the evidence generally does not support the alleged loss of functioning." (*Id.*) "Specifically," the ALJ said, "the allegations as to the severity of the claimant's physical limitations and symptoms are not wholly consistent with the lack of on-going or aggressive treatment and absence of objective evidence or remarkable clinical findings showing limitation to the degree alleged." (*Id.*)

Ultimately, Plaintiff's claim fails for two reasons. First, "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole.'" *Mitchell*, 771 F.3d at 782 (quoting *Dyer*, 395 F.3d at 1211) (brackets from original quote omitted). While Plaintiff points to evidence showing his limitations, the ALJ considered those records along with the rest of the record and Plaintiff's testimony, concluding that, as a whole, it did not support the limitations Plaintiff alleges. (Tr. 19.)

Second, the ALJ devoted several paragraphs to explaining why she did not believe that the Plaintiff's limitations were as severe as he claimed. (Tr. 19-21.) As

17

noted in the review of the evidence above, the ALJ addressed each of Plaintiff's severe impairments and the evidence related to each, including Plaintiff's obesity, carpal tunnel syndrome, and mastocytic colitis. (*Id.*) Substantial evidence supports the ALJ's determination. Nothing in the record indicates that the ALJ erred in her application of the pain standard, and the Court finds that the ALJ adequately explained her findings and referred to the medical evidence that she considered in reaching her conclusions. (Tr. 35-36.) For these reasons, Plaintiff's claim fails.

### IV. Conclusion

Upon review of the administrative record, and considering Plaintiff's argument, this Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON MARCH 11, 2022.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
206728